UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA EILRICH, | No. 2:21–cv–832 DAD-KJN |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | (ECF Nos. 28, 31.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying an application for Disability Insurance Benefits and Supplemental Security Income.[1] In his summary judgment motion, plaintiff contends the Administrative Law Judge erred in: (A) resolving plaintiff's non-severe impairments at step two; (B) resolving the opinions of a medical source; and (C) resolving plaintiff's subjective symptom testimony. Plaintiff seeks a remand for further proceedings. The Commissioner opposed, filed a cross-motion for summary judgment, and seeks affirmance. For the reasons that follow, the court recommends plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision of the Commissioner be AFFIRMED.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for the issuance of findings and recommendations. See Local Rule 304. Further, for ease of reading, the court refers to Marc Eilrich (the original claimant) as the "plaintiff" even though he is deceased, and the action has continued in the name of his wife and children.

1

I. **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3). An Administrative Law Judge ("ALJ") is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

2

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income in June of 2005. (Administrative Transcript ("AT") 449-53.) Plaintiff alleged an onset date of July 1, 2002, claiming disability due in part to "IBS, diverticulitis, polyps, problems with leg[,] back and sciatic nerve, numbness in legs, problems with feet[,] arthritis, pain in shoulders . . . ." (See AT 143.) Plaintiff's applications were denied, and a district court affirmed. (AT 69-80; 143-47; 587-638.) In September of 2013, the Ninth Circuit remanded the case in light of newly discovered evidence, finding that revelations from a 2010 surgery of plaintiff's intestines and abdomen could be probative of plaintiff's health as it existed in 2002. (AT 88-89.) On August 7, 2014, a second ALJ ruled against plaintiff, finding no evidence existed to link the 2010 revelations to plaintiff's health in 2002. (AT 101-15.) Plaintiff again filed suit in this court; in February of 2016, Magistrate Judge Delaney again remanded, finding the second decision failed to adequately address the issue raised by the Ninth Circuit because the ALJ merely substituted his own opinion in place of medical evidence. (AT 116-21.) Back at the agency, plaintiff's widow appeared alongside counsel at a December 2019 hearing before a third ALJ, where she testified about plaintiff's conditions, and where a vocational expert testified about available jobs for those with certain limitations. (AT 24-57.)

On March 3, 2021, the third ALJ issued a decision concluding plaintiff was not disabled for the relevant period. (AT 1-23.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity between July and December of 2002. (AT 8.) At step two, the ALJ determined plaintiff had the following severe impairments: chronic bilateral inguinal pain of uncertain cause, likely neuropathic; and irritable bowel syndrome with mixed features. (Id.) The ALJ labeled "non-severe" plaintiff's asserted impairments of hypertension and high blood pressure, polyps, diverticulitis, diverticulosis, and any issues with his hands, knees, and feet. (AT 8-9.) The ALJ cited "the medical summary below" and found the diverticulitis, diverticulosis, and polyps had been minimal, mild, and benign; the hypertension and high blood pressure had been effectively controlled with medication and conservative treatment; and the asserted issues with plaintiff's hands, knees, and feet lacked supporting medical evidence. (AT 9.)

At step three, the ALJ found no listing equivalencies. (AT 9; citing 20 C.F.R. Part 404, Subpart P, App'x 1.) The ALJ then found plaintiff had the residual functional capacity ("RFC") in 2002 to perform medium work as per Title 20 C.F.R. § 404.1567(c), except that he "could be expected to be off task 5% of the time due to pain and fatigue" and should have no more than frequent instances of "postural activity[,] use of ramps and stairs[,] work[ing] at exposed heights[,] and fingering." (AT 10.) In crafting this RFC, the ALJ stated he considered plaintiff's testimony, the medical evidence and opinions, and other evidence. (Id.) This evidence included plaintiff's description of his symptoms from his numerous disability reports and hearing testimony (AT 11-12), the testimony of plaintiff's wife and other third parties (AT 13; 20-21), the probative portions of the medical evidence (AT 14-19), and the medical opinions of two state-agency physicians, plaintiff's 2006 treating physician, and an impartial medical expert who reviewed the record in 2020 (AT 19-20).

Relevant here is this 2020 opinion of Dr. Puestow, a doctor of endocrinology and internal medicine, who responded to interrogatories propounded by the ALJ that were tailored to the issue of the 2010 surgery. (AT 18, 20.) The key interrogatory at issue described plaintiff's October 2010 surgery intended to "correct complications from a prior inguinal hernia surgery in 1995," as well as the Ninth Circuit's 2013 memorandum noting how this surgery had revealed conditions that could have affected plaintiff's impairments as they existed in 2002. (AT 4-5.) Dr. Puestow reviewed the evidence in the record and opined that there was "no objective evidence" of a connection between plaintiff's health in 2002 and the 2010 revelations, nor any evidence that plaintiff's symptoms were connected to the 2010 revelations. (AT 18, citing AT 855.) Dr. Puestow opined that it was likely plaintiff's intestinal and abdominal pain were unrelated, the latter likely due "primarily to irritable bowel." (AT 18, citing AT 858.)

Based on the RFC and the VE's testimony, the ALJ determined that in 2002, plaintiff was capable of performing past relevant work as an Operating Engineer (medium, skilled) as generally performed in the national economy; thus, the ALJ found plaintiff was not disabled. (AT 22.) Plaintiff filed this action requesting judicial review of the Commissioner's (third) final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 1, 28, 31.)

III. **ISSUES PRESENTED**

Plaintiff contends the Administrative Law Judge erred in: (A) resolving multiple non-severe impairments at step two; (B) resolving the 2020 medical opinion of Dr. Puestow regarding whether adhesions identified in the 2010 exploratory surgery were present in 2002; and (C) resolving plaintiff's subjective symptom testimony. Plaintiff requests a remand for further proceedings. (ECF No. 28.)

The Commissioner disagrees, arguing the ALJ appropriately resolved: (A) plaintiff's non-severe conditions at step two; (B) the opinion of Dr. Puestow; and (C) plaintiff's subjective symptom testimony. Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should result in affirmance. (ECF No. 31.)

IV. **DISCUSSION**

A. Step Two Determinations

**Legal Standards at Step Two**

At step two, the ALJ is to distinguish between those impairments that are "severe" and "non-severe." See 20 C.F.R. § 404.1520. A "severe" impairment is one that significantly limits the physical or mental ability to perform basic work activities. Id. "An impairment or combination of impairments may be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

When asserting a condition has more than a minimal effect, the plaintiff must provide medical evidence beyond a mere diagnosis and cannot rely solely on symptom testimony. 20 C.F.R. 404.1529(a). However, the step two assessment is a "de minimus screening device to dispose of groundless claims," and the ALJ's conclusion must be supported by the medical evidence in the record. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Even when evidence in the record is "susceptible to more than one rational interpretation," the ALJ's findings are determinative when "supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

///

**Analysis**

Plaintiff contends that the ALJ's step two findings "are so vague and unsupported by any identified evidence that meaningful review is not possible." Plaintiff cites, by way of example, the ALJ's findings regarding diverticulitis, diverticulosis, and colonic polyps; it reads in full:

> As discussed in the medical summary below, the claimant was diagnosed with diverticulitis or diverticulosis as well as colonic polyps during the period at issue. The diverticulitis or diverticulosis was often noted to be minimal or mild. The polyps were benign. All of those conditions were treatable with medications, changes in diet, and/or surgery, and the claimant did have polypectomies.

(AT 9.) Plaintiff notes this passage fails to cite any medical evidence and fails to identify which conditions were treatable with medication, changes in diet, or surgery. Plaintiff then appears to lodge the "vague and unsupported" argument against each other of the ALJ's findings at step two, though only in a general sense.

If the court were to read the ALJ's step two analysis in isolation, plaintiff's argument might have traction, as the text at step two regarding the non-severe conditions is indeed brief. However, contrary to plaintiff's contentions, the step two analysis on each of these conditions does not just pronounce these things to be true. Instead, the ALJ starts each paragraph of the analysis on the non-severe conditions by referencing "the medical summary below," "the objective medical evidence," or "the record" before providing a rationale. (AT 9.) When determining whether the ALJ's conclusions are supported by substantial evidence, the court reviews the record as a whole, Luther, 891 F.3d at 875, and cannot reverse just because a decision fails to be clearly written. Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less-than-ideal clarity, we must uphold it if the agency's path may reasonably be discerned."). Thus, the court considers the ALJ's citation of the probative evidence throughout the decision alongside the ALJ's rationale at step two.

To reiterate, the ALJ found the following of plaintiff's alleged conditions to be non-severe during the relevant period: (1) diverticulitis, diverticulosis, colonic polyps; (2) hypertension and high blood pressure; and (3) hands, knees, and feet conditions; and (4) severe liver impairment, peripheral vascular disease, and pancreatic cancer.

1. <u>Diverticulitis, Diverticulosis, Colonic Polyps</u>

For plaintiff's diverticulitis, diverticulosis, and colonic polyps, the decision devotes significant space to discussing the evidence about these conditions in the section below the RFC finding.  The ALJ noted plaintiff's 2005 testimony asserting he had issues due to IBS, diverticulitis, and polyps, as well as plaintiff's function reports where he stated he was unable to do chores because of pain, worsening symptoms, and a need to stay near a toilet at all times.  (AT 11, <u>citing</u> AT 136; 142; 505-06; 522; 524; 533-36; 541-44; 553-85.)  However, the ALJ also noted plaintiff stated his IBS was tolerable in 2002 (AT 12, <u>citing</u> AT 559), and he continued only taking over-the-counter medications for pain up through 2007 (<u>Id.</u>, <u>citing</u> AT 564).

Regarding the medical evidence, the ALJ discussed a significant amount of evidence in the record, both from the pre- and post-insured period, including:

- Plaintiff's treatment in 1997 for abdominal pain, diarrhea, chronic bowel problems, diverticulosis coli, and status post right inguinal hernia repair (AT 684-85; 769; 831-32);
- Dr. Sande's recommendation of a high fiber diet with occasional use of medication, which plaintiff reported doing well with minimal diverticulosis found afterwards (AT 708; 683; 676; 702);
- The removal of a polyp with no complications in 1998 (AT 691-92; 727; 837-38);
- A 1999 CT scan revealing no significant abnormalities in the pelvis and normal abdominal findings (AT 678; 703; 709; 711; 725);
- In 2000, Dr. Sande's recording of plaintiff's expressed inguinal pain, the doctor's diagnosis of possible scarring from previous inflammation, and an opinion that plaintiff's stated symptoms were "out of proportion to the findings with extensive workup" (AT 679);
- Also in 2000, Dr. Sande's trigger-point injection and recommendation that plaintiff receive another (or oral medications) if his symptoms continued, as well as that no follow up was sought by plaintiff until 2010 (<u>Id.</u>);
- In June 2002, Dr. Sande's note of plaintiff's same complaints with an admission that his bowel habits were fairly regular (AT 677-78);
- Dr. Sande's opinion that plaintiff's inguinal pain was likely connected to the 1995 surgery but this surgery did not explain the bilateral pain (<u>Id.</u>);
- Dr. Sande's prescription of Nortriptyline and ALJ's note that the record was unclear whether plaintiff filled this prescription (<u>Id.</u>);
- In July 2002, the removal of a benign polyp during a colonoscopy (AT 689-90);
- An exam in 2005 noting abdominal pain, plaintiff's reports of a history of diverticulosis, polyps, IBS, a well-healed right inguinal hernia repair, and a benign abdomen (AT 834); and

- A 2007 exam for abdominal pain revealing moderate diverticulosis (AT 794; 792; 814; 824-25; 834).

(AT 14-15; 17.) Additionally, regarding the bilateral inguinal hernia, the ALJ discussed plaintiff's October 2010 surgery that was intended to "correct complications from [the 1995] surgery." (AT 12, citing AT 619; 841-44.) Given that the Ninth Circuit instructed the ALJ to examine whether revelations from this surgery affected plaintiff's impairments as they existed in 2002 (as well as Magistrate Judge Delaney's instructions on the second remand in 2016), the ALJ chose to rely on the interrogatory answers and opinions of Dr. Puestow, provided in February of 2020. (AT 18.) Therein, Dr. Puestow opined there was "no objective evidence adhesions were present in 2002," nor any evidence plaintiff's "symptoms were due to adhesions." (Id., citing AT 855.) Dr. Puestow opined that it was "likely the inguinal pain and the abdominal pain were unrelated," the latter likely due "primarily to irritable bowel." (Id., citing AT 858.)

This substantial, if not exhaustive, recounting of the probative evidence on plaintiff's diverticulitis, diverticulosis, and colonic polyps is more than enough for the court to discern the source of the ALJ's conclusions at step two. Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less-than-ideal clarity, we must uphold it if the agency's path may reasonably be discerned."). No error is apparent in the non-severe findings here. Webb, 433 F.3d at 686 ("An impairment . . . may be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.").

2. Hypertension and High Blood Pressure

Regarding plaintiff's hypertension and high blood pressure conditions, the ALJ similarly cited a significant amount of evidence, including:

- The diagnoses from plaintiff's health providers prescriptions (AT 208-27);
- Plaintiff's wife's refill request for blood pressure medication in 2000 and plaintiff's refill for his hypertension medication in 2002 (AT 763; 768);
- Records indicating the medications controlled these conditions, and that plaintiff was often non-complaint with his prescriptions and had continued smoking (elevating his blood pressure) (AT 208-27; 763-64; 768).

(AT 13; 15-16.) The ALJ's conclusion at step two coupled with this evidentiary discussion satisfies the ALJ's substantial evidence burden. Webb, 433 F.3d at 686.

### 3. Hands, Knees, and Feet

Plaintiff contended in his application that he was disabled due to "problems with leg[,] back and sciatic nerve, numbness in legs, problems with feet[, and] arthritis." (See AT 143.) The ALJ noted plaintiff's reiteration of many of these contentions in his testimony and functional reports. (AT 11-12, citing AT 136; 142; 505-06; 522-23 (plaintiff's 2005 testimony averring "problems with his leg and back, sciatic nerve, numbness in his legs, problems with his feet, arthritis"); 524; 533-36; 541-44; 553-85 (plaintiff's 2007 testimony, including at 563 where he stated he had been using a cane to walk). The ALJ also noted Dr. Sande's 1997 impression of years-old knee and back surgeries, as well as a prescription for crutches, a cane, and a brace. (AT 14, citing AT 684-85; 831-32). The ALJ found that, despite plaintiff's assertions, the medical evidence and prior admissions led to the conclusion these impairments were not severe. In so concluding, the ALJ cited the following evidence:

- Plaintiff's testimony in some of these same reports that his back improved up through 2001 (AT 559), that he did not receive treatment for any back or knee issues in 2002 (AT 574), that he provided vague answers as to how often he used braces or a cane (AT 522; 575 (stating he did not use a cane "all that much" in 2002), and that he only took over-the-counter medications for pain up through 2007 (AT 564);
- Regarding plaintiff's ability to finger, the ALJ noted this evidence arose well after the relevant period (AT 792; 814; 824-25.)
- The 2006 medical opinion of Dr. Wilcox, who stated plaintiff could not do sedentary work because of his hand, back, knee and foot pain due to the impairments. The ALJ assigned little weight to this opinion, finding it related to plaintiff's condition as it was in 2006, and noting the evidence on these conditions from 2002 indicated plaintiff had been conservatively treated and functioning much better in 2002 (AT 20);
- Dr. Puestow's 2020 opinion that plaintiff could stand, walk, or sit for only 3-4 hours per day and only frequently perform postural activities. The ALJ assigned partial weight to this opinion, finding the sit-walk-stand opinion was inconsistent with the medical records from the relevant period and finding plaintiff's condition required a more restrictive RFC on other of plaintiff's conditions (AT 20, citing AT 859-64).

(AT 11-12; 17.) As with the other of the ALJ's analysis, the undersigned finds the ALJ's linking of his conclusions at step two to be supported by the substantial evidence cited in the RFC section. Ford, 950 F.3d at 1154; Molina, 674 F.3d at 1121.

///

    4.   Remaining non-severe conditions

Regarding plaintiff's liver impairment, peripheral vascular disease, and pancreatic cancer, the undersigned notes that plaintiff does not appear to specifically challenge the ALJ's decision on these conditions. (See ECF No. 28 at 9-10 (proffering arguments concerning the ALJ's analysis of plaintiff's asserted diverticulitis, diverticulosis, colonic polyps, hands, knees, and feet).) Thus, the court does not believe any argument from plaintiff is before it.

However, assuming arguendo the opposite, the court finds the ALJ's identification of and conclusions on these conditions (AT 9) coupled with a review of the medical evidence (AT 16-17) to be sufficient for the court to provide a review and affirm on these points. The ALJ noted no evidence existed in the record indicating plaintiff had a severe liver impairment in 2002, or that his vascular disease and pancreatic cancer arose during the relevant period. Thus, the ALJ properly resolved these issues at step two. Molina, 674 F.3d at 1121.

**B. Medical Opinion Evidence**

Next, plaintiff contends the ALJ committed multiple errors when resolving the expert medical opinion of Dr. Puestow. The doctor responded to the ALJ's 2020 interrogatories concerning the relationship between revelations made during the 2010 exploratory surgery and plaintiff's conditions as they existed in 2002. Plaintiff contends: (1) the interrogatories were excessively leading; (2) Dr. Puestow failed to offer persuasive answers supported by citation to the record; and (3) the ALJ failed to permit plaintiff the opportunity to cross examine Dr. Puestow.

**Legal Standards – Medical Opinions and Persuasiveness**

For cases filed before March 2017, generally speaking, the ALJ is required to consider a host of factors in deciding the weight given to any medical opinion. These include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, specialization, and any other factors deemed relevant. 20 C.F.R. § 404.1527(c)(1)-(6).

In order to evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether: (1) contradictory opinions are in /the record;

10

and (2) clinical findings support the opinions. Lester, 81 F.3d at 831. Rejection of most medical opinions under this old framework operated under a "specific and legitimate" framework. Id. at 830. An ALJ could provide specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 2011).

**Analysis**

1. The ALJ's interrogatories were not "excessively leading."

Plaintiff first contends the ALJ's interrogatories to Dr. Puestow were excessively leading. Plaintiff focuses on the interrogatory at the top of page 4 ("Question A"), which reads:

> As noted above, the claimant's alleged onset date is July 1, 2002, and his date last insured is December 31, 2002. A person who presumably is not a physician stated this: "In October 2010, [the claimant] underwent exploratory laparoscopic surgery, which revealed serious bilateral adhesions likely caused by diverticulosis, a previous appendectomy, and scarring from a 1995 groin hernia. The presence of serious intestinal adhesions in 2010 is probative of the actual severity of [the claimant's alleged] impairment in 2002 . . . . [Therefore,] the ALJ should consider . . . whether [the claimant's alleged] impairment was 'severe'. . . prior to the expiration of his disability coverage in 2002."
> Given the observation above, do YOU believe that the presence of intestinal adhesions in 2010 would likely indicate the presence of intestinal adhesions between July 1, 2002, and December 31, 2002? Please explain your answer.

(AT 855.) Plaintiff offers a different version of an interrogatory he contends would be more within the spirit of the regulations. See Sims v. Apfel, 530 U.S. 103, 110-11 (2000) (noting the ALJ's duty to investigate facts and develop arguments both for and against granting benefits).

Contrary to plaintiff's argument, the court does not read this interrogatory (or any of the others) as a violation of his duty to remain impartial, as the interrogatories and decision are not read in isolation but in relation to the entire record. Luther, 891 F.3d at 875. While this interrogatory is indeed directed at a very specific issue, it reasonably does so because this is the very issue the Ninth Circuit remanded on (and the very issue Magistrate Judge Delaney reiterated when ordering the Commissioner to solicit evidence—not just the ALJ's opinion—on the matter). Given that this case had been twice remanded, it was completely reasonable for the ALJ to quote the Ninth Circuit directly, and equally reasonable to inform Dr. Puestow the statement was not

from a medical source. And, critically, the interrogatory does not confine Dr. Puestow to a predetermined answer, as he could have opined the opposite on Question A. As the Commissioner points out, the interrogatories begin by seeking to establish Dr. Puestow's impartiality, which the doctor did. (See AT 852.) Thus, this interrogatory did not turn the ALJ into an adversary as plaintiff suggests, and the court finds no error in the ALJ's fashioning of this (or the other) interrogatories as he did. Ford, 950 F.3d at 1154 (noting the breadth of the substantial evidence standard).

      2. <u>Substantial evidence supports the ALJ's resolution of Dr. Puestow's opinion.</u>

Next, plaintiff contends Dr. Puestow's failure to fully answer the interrogatories as instructed should have led to a conclusion that the opinion is not persuasive. Plaintiff notes that interrogatory 6 instructs Dr. Puestow to not only identify plaintiff's impairments, but also to "cite the objective medical findings that support [this] opinion, with specific references (exhibit or page number) to the evidence we provided from the case record." (AT 852.) Interrogatory 7 similarly instructs Dr. Puestow to explain why a listing would not be met, and (as noted above) Question A instructs the doctor to explain his answer regarding the 2010-2002 connection. (AT 853-54.) Plaintiff raises similar concerns with Dr. Puestow's "Medical Statement of Ability to do Work-Related Activities," which is a simple check-box form with no additional notes from the doctor. (See AT 859-64.) With each of these responses, the doctor failed to fully answer the question as requested, simply listing his conclusions and checking boxes.

Plaintiff is correct that the ALJ would have been within his rights to reject any portions of Dr. Puestow's opinion if the ALJ found it to be unsupported or contradicted by other opinions in the record. Lester, 81 F.3d at 831; see also Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022) (noting the ALJ reasonably rejected an unsupported and unexplained opinion that came in check-box form). In fact, the ALJ did reject certain portions of the Medical Statement, reasoning that with plaintiff's ability to stand, walk, or sit over the course of a workday, the ALJ found the doctor's limitations inconsistent with the medical evidence and conservative treatment (up through the date of the decision and "in the years beyond"). (AT 20.) The question is whether the doctor's failure to fully answer the interrogatories and complete the Medical Statement is a

shortcoming requiring the ALJ to reject <u>all</u> of the doctor's opinion. The answer is no, so long as the ALJ set forth his conclusions backed up by substantial evidence. <u>Ford</u>, 950 F.3d at 1154. And with the portions of the doctor's opinion the ALJ found persuasive, he did just that.

Regarding the potential 2010-2002 abdominal connection, the ALJ noted other portions of the record consistent with Dr. Puestow's opinion that no connection likely existed. (AT 14-16; 18.) The ALJ also specifically noted the doctor's answer to the catch-all question, which read:

> It is likely the inguinal pain and the abdominal pain were unrelated. It is most likely that the abdominal symptoms were primarily due to irritable bowel, a motility disorder. This is the opinion of his treating physicians as stated in the record.

(<u>See</u> AT 18; <u>citing</u> AT 858.) Regarding Dr. Puestow's other opinions on plaintiff's ability to perform physical activities, the ALJ concurred on plaintiff's ability to perform postural activities, finger, and work in certain environments, finding those opinions consistent with the medical evidence  (<u>Id.</u>)

Given that the ALJ provided a roadmap of how he reached this conclusion by thoroughly discussing the probative evidence in the record in the sections below the RFC statement, the court finds the ALJ did not fail in his duty to properly evaluate Dr. Puestow's opinion in light of the record as a whole. <u>Magallanes</u>, 881 F.2d at 751 (noting the ALJ's duty to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[]e [an] interpretation thereof, and mak[e] findings"); <u>Luther</u>, 891 F.3d at 875 (regarding the duty to read the record as a whole).

3. <u>The ALJ did not abuse his discretion in issuing the decision.</u>

Finally, plaintiff contends the ALJ's failure to allow cross-examination of Dr. Puestow was an abuse of discretion. <u>See</u> 20 C.F.R. § 404.950(e) (noting the authority regarding cross examination). After the ALJ received Dr. Puestow's responses, he forwarded them to plaintiff on February 20, 2020, and informed him he had the right to proffer questions to Dr. Puestow, request a supplemental hearing, or request a subpoena. (AT 672-73.) Plaintiff responded on March 6th by requesting a transcript hearing where the ALJ interviewed plaintiff's wife and the VE. (AT 675.) The ALJ's next act was to issue his decision.

While the court shares some of plaintiff's concerns as to the ALJ's choice to issue the decision without sending the hearing transcript, the court ultimately finds this act to be within the ALJ's discretion. See Ford, 950 F.3d at 1154 (noting a denial of request for evidence is reviewed for abuse of discretion). Plaintiff could have proffered questions to Dr. Puestow on the salient matter—the connection between plaintiff's 2010 surgery and his condition as it existed in 2002—because it had been discussed at length in the previous decisions by the prior ALJs, by this court, and by the Ninth Circuit. Simply, there is little connection between this last hearing and Dr. Puestow's interrogatory answers, and so the ALJ did not abuse his discretion in treating plaintiff's March 6th letter as non-responsive. Ford, 950 F.3d at 1154; see also, e.g., Vanderpool v. Celebrezze, 240 F. Supp. 801, 805 (D. Or. 1965) (finding plaintiff waived the right to cross examine a witness in an administrative proceeding where the ALJ offered specific instructions to plaintiff on how to proceed and plaintiff chose not to follow the ALJ's instructions).

**Conclusion**

For these reasons, the court finds the ALJ properly resolved all issues surrounding Dr. Puestow's opinion as expressed in the interrogatory responses.[2] Magallanes, 881 F.2d at 751.

**C. Subjective Symptom Testimony**

**Legal Standards – Subjective Symptom Testimony**

In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

---

[2] Plaintiff also notes that the ALJ initially indicated he would send interrogatories to a gastroenterologist, but chose instead Dr. Puestow, whose specialty is endocrinology. (ECF No. 28 at 11:3-7.) It is not clear whether plaintiff is actually challenging the choice of an endocrinologist or if he is simply noting it in passing. Assuming arguendo the former, the court finds no error, as Dr. Puestow is also a doctor of internal medicine (AT 850) and otherwise appears qualified to opine on medical evidence in this context. Ford, 950 F.3d at 1154.

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include:  the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and inconsistencies between the alleged symptoms and the medical evidence of record.  See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider.  See Rollins, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).  A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability, because if an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose.  See 20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

**Analysis**

Plaintiff contends the ALJ erred in resolving his symptom testimony, asserting "there is still not a legitimate answer to the question identified by the Ninth Circuit as integral to a proper credibility evaluation."  (ECF No. 28 at 16.)  Plaintiff argues that in rejecting his symptom testimony, the ALJ only cited to the medical evidence and Dr. Sande's statement that plaintiff's symptoms were "out of proportion to the [objective medical] findings"; plaintiff notes that under the Ninth Circuit's standards, this is not enough.

///

Plaintiff is correct that a lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms. See Rollins, 261 F.3d at 857.  However, it is a factor the ALJ may consider alongside other reasons, such as where a plaintiff's symptoms can be conservatively treated, including with over-the-counter medications, where plaintiff's daily activities do not align with the symptom testimony, or where the plaintiff has otherwise offered inconsistent testimony.  Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act); Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness).  This analysis is what the ALJ did here.  (See AT 14 (noting plaintiff's inconsistent statements, inconsistent daily activities, and conservative treatment that included changes to his diet and use of over-the-counter pain medication).  Thus, the court finds no error in the ALJ's resolution of plaintiff's symptom testimony.

## V.     CONCLUSION AND RECOMMENDATIONS

Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error.  Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence.")  Accordingly, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's motion for summary judgment (ECF No. 28) be DENIED;

2.     The Commissioner's cross-motion (ECF No. 31) be GRANTED;

   3.   The final decision of the Commissioner be AFFIRMED; and

   4.   The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  July 31, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

eilr.832